UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM CHANTLY LACLAIRE,<br><br>Defendant. | 3:08-CR-30032-RAL<br><br><br>OPINION AND ORDER ADOPTING<br>REPORT AND RECOMMENDATION |

In 2008, Defendant William Chantly LaClaire pleaded guilty to assaulting, resisting, or impeding a federal officer with a dangerous weapon. Doc. 89. He was sentenced to sixty months in prison with three years of supervised release to follow. Doc. 89. Since LaClaire's initial release from custody in 2013, this Court has revoked his supervised release three times. Docs. 121, 149, 181. LaClaire's terms of supervised release contain a mandatory condition stating: "The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon." Doc. 181. The terms also contain a standard condition stating: "the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician." Doc. 181.

In late December 2016, Walt Dansby, LaClaire's probation officer, filed a petition to revoke LaClaire's supervised release. Doc. 194. The petition sought revocation on the grounds that LaClaire allegedly: 1) violated his supervised release by testing positive for

methamphetamine and marijuana on December 7, 2016; 2) violated his supervised release by committing simple assault on December 19, 2016 in Rapid City, South Dakota;[1] and 3) violated his supervised release by possessing a dangerous weapon on December 19, 2016 in Rapid City. Doc. 194.

Magistrate Judge Mark Moreno held a revocation hearing at which he received exhibits and heard testimony from Dansby and Rapid City police officers Kyle Akers and Robert Neisen. Dansby testified that he went over the terms of supervised release with LaClaire when LaClaire began his most recent term of supervised release, T. 9, 13, that in early December 2016 LaClaire had signed a form admitting that he had used marijuana and methamphetamine, T. 13–15, and that although Dansby had stated in the petition to revoke that LaClaire was going to have to serve three days in jail as a DROPS sanction for using marijuana and methamphetamine, LaClaire had been arrested before he could serve the sanction, T. 15–16. On cross examination, Dansby testified that the DROPS sanction was going to be the punishment for LaClaire's alleged drug use and agreed that the DROPS program provides a sanction, in part, to alleviate the need for filing a petition to revoke. T. 17. Dansby also explained that the reason LaClaire had not served his DROPS sanction was that probation had not completed the necessary paperwork before LaClaire was arrested on different charges. T. 18–19.

Officer Neisen testified that when he encountered LaClaire on December 19, 2016 in connection with an assault call, he saw LaClaire remove an unfolded pocket knife from his jacket pocket and throw it on the ground. T. 32–33. Officer Neisen described the pocket knife's blade as being less than three inches. T. 32. Although Officer Neisen testified that it was uncommon for someone carrying a pocket knife to have it unfolded in his pocket, T. 35, he admitted on cross

---

[1] The government declined to pursue the simple assault allegation as a ground for revocation.

2

examination that LaClaire could have unfolded the knife as he removed it from his pocket, T. 39. Officer Neisen also agreed that there was nothing illegal about the pocket knife and that there were no allegations that LaClaire had threatened anyone with it. T. 34–35. In response to questions from Judge Moreno, Officer Neisen testified that he did not consider the pocket knife a dangerous weapon under the circumstances. T. 38.

Officer Akers testified that he had transported LaClaire to jail after LaClaire was arrested for assault on December 19, 2016. T. 22–24, 34. Officer Akers explained that while being booked into jail, LaClaire had removed a knife from his pants and handed it to the jailer. T. 24–25. Another officer had searched LaClaire before but had missed the knife. T. 26, 28. Officer Akers described the knife as having a five-inch fixed blade and being approximately eleven inches in total length. T. 26. On cross examination, Officer Akers agreed that there were no allegations that LaClaire had threatened anyone with the knife. T. 27. He also described the knife as a "hunting knife," that could be purchased at a sporting goods store. T. 30.

At the end of the hearing, LaClaire's attorney argued that the knives did not qualify as dangerous weapons under the circumstances. T. 42–43. He also argued that the DROPS program establishes sanctions for drug use that should apply in lieu of filing a petition to revoke, and that it would constitute double jeopardy to both impose a DROPS sanction and revoke LaClaire's supervised release for using marijuana and methamphetamine. T. 44. Judge Moreno took the dangerous weapon question under advisement, but found that the double jeopardy argument concerned sentencing rather than whether LaClaire had violated the terms of his supervised release. T. 45. Thereafter, Judge Moreno issued a report and recommendation concluding that LaClaire had violated the terms of his supervised release by using marijuana and methamphetamine and by possessing a dangerous weapon, the knife with a five-inch blade. Doc.

210. In support, Judge Moreno cited the definition of a dangerous weapon in the Sentencing Guidelines and several statutes, as well as cases concluding that a knife constitutes a dangerous weapon. Doc. 210. LaClaire has now filed objections to the report and recommendation. Doc. 211.

I.   Analysis

This Court reviews a report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1), which provides in relevant part that "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."

LaClaire argues that the knives, which he says he uses "for work purposes," do not constitute dangerous weapons because they were not used in a dangerous manner and he was never charged with criminal possession of a dangerous weapon. He does not cite any legal authority in support of this argument but rather points to the testimony of the police officers as evidence that the knives were not dangerous weapons.

This Court overrules LaClaire's objection. First, the knife with the five-inch fixed blade constitutes a "dangerous weapon" as that term is typically understood under federal law. See U.S. Sentencing Guidelines Manual § 1B1.1 app. 1(D) (U.S. Sentencing Comm'n 2016) (defining a "dangerous weapon" as "an instrument capable of inflicting death or serious bodily injury"); see also 18 U.S.C. § 930(g)(2) (explaining that for purposes of § 930, a dangerous weapon "means a weapon, device, [or] instrument . . . that is used for, or is readily capable of, causing death or serious bodily injury, except that such term does not include a pocket knife with a blade of less than 2 ½ inches in length"). Second, multiple courts have concluded that a knife can constitute a dangerous weapon under the terms of a defendant's supervised release. See

United States v. Tumea, 810 F.3d 563, 566–67 (8th Cir. 2016) (explaining that a knife designed to look like a carabiner constituted a dangerous weapon under the terms of the defendant's supervised release); United States v. Garcia-Mejia, 394 F.3d 396, 398 (5th Cir. 2004) (per curiam) (explaining that a condition of supervised release prohibiting the possession of a dangerous weapon would not prevent the defendant from using a steak-knife at a restaurant to eat his meal but would prevent the defendant from carrying the steak-knife in his pocket for protection), vacated on other grounds, 545 U.S. 1102 (2005); United States v. Alston, No. 98-CR-176A, 2007 WL 2746901, at *5 (W.D.N.Y Sept. 19, 2007) (concluding that a knife with a three to four inch blade was a dangerous weapon under terms of defendant's supervised release); United States v. Pangelinan, No. CR. 99-00001, 2007 WL 1175033, at *1–3 (D. Guam Apr. 23, 2007) (holding that a three-inch pocket knife was a dangerous weapon under the terms of defendant's supervised release); see also United States v. Smith, 561 F.3d 934, 939 (9th Cir. 2009) (en banc) (stating when discussing 18 U.S.C. § 113(a)(3) that a knife was an "[i]nherently dangerous weapon"). Third, the circumstances support Judge Moreno's conclusion that the knife with the five-inch blade was a dangerous weapon. LaClaire possessed the knife when he was arrested for assault. He has not offered any evidence that he was working when he was arrested or that he has a job that requires him to carry a knife totaling approximately eleven inches in length. He was not wearing the knife on a work or utility built, but rather was concealing it in his pants. At the same time, LaClaire was carrying a pocket knife, something a person might normally carry for utility or work purposes; carrying a second knife concealed in his pants with a five-inch blade and eleven inches total is a dangerous weapon. This Court finds by a preponderance of the evidence that LaClaire violated the terms of his supervised release by possessing a dangerous weapon. Because possession of a dangerous weapon is sufficient to

justify revoking LaClaire's supervised release, this Court need not consider whether LaClaire's violation of the terms of his supervised release by using marijuana and methamphetamine should be another ground of revocation or dealt with solely through a DROPS sanction at this time.

## II.     Conclusion

For the reasons stated above, it is hereby

ORDERED that the report and recommendation, Doc. 210, is adopted to the extent it found that LaClaire violated the terms of his supervised release by possessing a dangerous weapon. It is further

ORDERED that LaClaire's objections to the report and recommendation, Doc. 211, are overruled. It is further

ORDERED that the petition to revoke supervised release, Doc. 194, is granted and that a sentencing hearing be set.

DATED this 13th day of March, 2017.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE